IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **CRISTIN PURVEY,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 14-3361 |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant. | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Cristin Purvey seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1982, has a high-school education, and previously worked as a bank teller, waitress, bartender, day care worker, and receptionist.  R. at 24-25, 46-48.  Plaintiff applied for DIB on April 22, 2011 (with a protective filing date of April 15, 2011), alleging disability beginning on September 15, 2009, due to Lyme disease, arthritis in the right knee and ankle, bilateral leg injuries, nerve damage, anxiety, and depression.  R. at 69, 183-90, 213.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 62-65, 91-95, 112-20.  On February 5, 2013, ALJ Frank L. Gregori held a hearing in Nashville, Tennessee, at which Plaintiff and a vocational expert ("VE") testified.  R. at 16-61.  On April 19, 2013, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of September 15, 2009, through the date of the decision.  R. at 66-90.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on August 28, 2014.  R. at 1-12.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 28, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     Opinion Evidence**

On July 6, 2011, William R. Huffman, M.D., conducted a consultative examination of Plaintiff.  R. at 604-14.  Dr. Huffman ultimately opined that Plaintiff

> would not be able to lift over 20 pounds.  She can sit for up to 6 hours per day, stand for up to 5 hours per day, and walk up to 6 hours per day.  She requires a cane for walking and can walk without the use of a cane approximately 50 yards.

R. at 607; *see* R. at 608-09.  Dr. Huffman also opined that Plaintiff could sit for twenty minutes, stand for twenty minutes, and walk for ten minutes at one time without interruption.  R. at 609.

On July 7, 2011, JoAnn Quintero, Ph.D., a licensed psychologist, conducted a consultative psychological evaluation of Plaintiff to assess her mental ability to perform work-related activities on a sustained basis.  R. at 615-24.  Dr. Quintero's diagnoses included recurrent, severe, major depressive disorder without psychotic features, rule out post-traumatic stress disorder.  R. at 620.

On July 28, 2011, a state agency medical consultant, J. Shane, assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 686-93.  The consultant opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday (with a medically required hand-held assistive device necessary for ambulation); (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling in the lower extremities.  R. at 687.  The consultant did not indicate that Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort.  R. at 687.  Plaintiff occasionally could balance, stoop, kneel, crouch, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 688.

Although Plaintiff had no manipulative, visual, or communicative limitations, she was to avoid even moderate exposure to hazards such as machinery and heights. R. at 689-90.

On October 18, 2011, another state agency medical consultant, Charles Settle, M.D., assessed Plaintiff's physical RFC. R. at 736-45. Dr. Settle opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for four hours in an eight-hour workday (with a medically required hand-held assistive device necessary for ambulation); (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling in the lower extremities. R. at 737. Dr. Settle also did not indicate that Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort. R. at 737. Plaintiff occasionally could balance, stoop, kneel, crouch, and climb ramps and stairs (but never crawl or climb ladders, ropes, or scaffolds). R. at 738. Although she had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. R. at 739-40.[2]

On November 1, 2011, Plaintiff reported that her right hand was numb to a family nurse practitioner and Richard Rubinowicz, M.D., at the Center for Neurological Treatment and Research PLLC. Plaintiff was diagnosed with carpal tunnel syndrome, and a nighttime wrist splint for her right hand was recommended. R. at 751-52.

**B.     Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony:

> [Plaintiff] testified that her right leg was a ½" to 1" shorter than her left leg, which caused her hip pain to get worse over time, and her muscles to get into "knots." She stated her mother took over caring for her nephew in 2009, indicating that she used to care for him before then. She stated it became too

---

[2] Because the ALJ's assessment of Plaintiff's mental RFC is not at issue in this case, the Court does not review here other state agency consultants' opinions regarding Plaintiff's mental RFC. R. at 694-711, 718-35.

4

difficult for her because she had two children the same age. She has three children, ages 11 years old, five years old, and three months. She reported that she stopped taking anti-depressants while she was pregnant with her last child. She testified she recently stopped nursing, so that she now could continue taking her medications for fibromyalgia, and other medications. Her husband was deployed overseas for a year, and she cared for her children, while a friend lived with her. She stated that her friend stayed to keep an eye on her if she fell and injured herself. She then testified that her friend's husband was deployed as well, and had her own home, but this friend of [Plaintiff] would sometimes sleep over at [Plaintiff's] home. She testified that this friend was a registered nurse, and would assist her with chores, such as washing dishes and laundry, as well. [Plaintiff] testified that she was too short to get into her top loading washing machine.

[Plaintiff] testified that she could not work because she could not function when on her pain medications. She testified that her pain was everywhere, and that it was unbearable. She testified that she had migraines and carpel [sic] tunnel syndrome. She testified that she drove, but that her legs would swell if she drove too far. She stated that her right ankle hurt using the pedals while driving her car, so that she had to use her left foot a lot. She testified that she could lift her 11 pound daughter for short periods. She testified that she could not do a job where she was sitting because she stated those jobs usually involved a computer, and her carpel [sic] tunnel syndrome would not allow that. She stated that she dropped things and had no strength in her hands. She testified that if her arm hurt, she would not pick up her baby, which happened two to three times a week. She testified that her husband had a computer at home, but if she got on it, she would get right back off. He [sic] stated she was rarely on her Facebook account. She testified that she took a three-day car trip to Maryland and New York in 2010-2011 with her children and a friend. She stated that her friend drove, while she lay in the car for much of the trip. She testified that her hip and lower back pain also precluded her from doing a job requiring mostly sitting. She stated she took Motrin, used a heating pad, and took a hot bath for her pain. She stated she had depression and anxiety, reporting crying spells. She reported problems with mental issues before her accident in 2002. She testified that she felt her physical problems stemmed from this accident. She stated she could stand and sit for 5 to 10 minutes each at a time. She reported she could not walk far, and used a cane, wheelchair, and a walker. She testified she could lift ten pounds, and could not push or pull much weight.

R. at 74-75; *see* R. at 24-46, 48-54.

C. **VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience who had the RFC outlined in Part III below could not perform Plaintiff's past

work but could perform the sedentary, unskilled[3] jobs of sorter, electrical assembler, or security-system monitor. R. at 54-56. The VE's testimony was consistent with the *Dictionary of Occupational Titles*[4] (the "DOT"). R. at 48, 56. The ALJ took judicial notice that bilateral carpal tunnel syndrome causing significant limitation in handling and fingering would preclude all work and render a person disabled. R. at 59.

### III

### Summary of ALJ's Decision

On April 19, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of September 15, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a sorter, electrical assembler, or security monitor. R. at 71-82. The ALJ thus found that she was not disabled from September 15, 2009, through the date of the decision. R. at 82.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 404.1568(a).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

In finding that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04 and 12.06 found in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04 and 12.06, the ALJ found that Plaintiff experienced (1) mild restriction in activities of daily living; (2) mild difficulties in social functioning; (3) moderate difficulties with regard to concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 72-73. The ALJ ultimately found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b). She can occasionally lift and/or carry 20 pounds and ten pounds frequently. She can stand and/or walk for a total of about two hours in an eight-hour workday. She would be medically required to use a hand-held assistive device while ambulating. She can sit for a total of about six hours in an eight-hour workday. She can rarely (less than 10% of the workday) use the right lower extremity for foot controls, or pushing or pulling. She can rarely operate a motor vehicle. She can rarely (10% of the workday or less) climb stairs or ramps. She can never climb ladders, ropes, or scaffolds. She can never crawl. She can occasionally balance, stoop, kneel, and crouch. She must avoid concentrated exposure to respiratory irritants. She can understand, remember, and carryout [sic] simple one to three step detailed tasks. She cannot make independent decisions at an executive level. She can maintain adequate concentration, persistence, and pace on such simple and detailed tasks throughout an eight-hour workday with customary work breaks. She can engage in no more than occasional interaction with the general public and co-workers on a superficial basis. She can adapt to infrequent changes and set goals within these restrictions.

R. at 73-74.[5]

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 75. The

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

7

ALJ gave "some" weight to the function reports provided by Plaintiff's friends to the extent that they showed that she was more functional than alleged, but "little" weight to their opinions regarding disability. R. at 79 (citing R. at 221-33, 290-99). The ALJ gave "great" weight to the opinions of the state agency psychological consultants (R. at 81 (citing R. at 694-711, 718-35)) and to Dr. Quintero's opinion (R. at 81 (citing R. at 621-22)). The ALJ further noted that, "[d]espite [the ALJ's] urging [Plaintiff] and her attorney to obtain some kind of written opinion from her treating neurologist, Dr. Rubinowicz was unwilling and declined to provide [Plaintiff] with any kind of opinion letter or functional capacity assessment. R. at 81 (citing R. at 362-64); *see* R. at 42-44, 59-60.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124

S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[7] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-11, ECF No. 15-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5. In particular, she contends that, although the ALJ found that her carpal tunnel syndrome was a severe impairment, the ALJ failed to include any limitation related to this impairment in the RFC assessment or in the hypothetical questions to the VE. *Id.* at 5-7, 10-11. Plaintiff also asserts that the ALJ erroneously evaluated the opinions of Dr. Huffman, the consultative examiner, and failed to include a sit-stand option in the RFC assessment. *Id.* at 7-10. According to Plaintiff, substantial evidence thus does not support the ALJ's decision. For the reasons discussed below, Plaintiff's assertions are unavailing.

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

"assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff first contends that the ALJ failed to include in the RFC assessment any limitation related to her carpal tunnel syndrome, which the ALJ found to be a severe impairment (R. at 71). Pl.'s Mem. Supp. Mot. Summ. J. 5-7, 10-11, ECF No. 15-1. "To the extent [Plaintiff] suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit," however. *Burkstrand v. Astrue*, 346 F. App'x 177, 180 (9th Cir. 2009) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009)). As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a

medically severe impairment or combination of impairments. "Step two of the sequential evaluation is a threshold question with a de minimis severity requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam). In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98). Thus, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Thus, "an ALJ is not required to include a corresponding limitation for each severe impairment." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013). In any event, as Defendant points out, Plaintiff has not demonstrated that her carpal tunnel syndrome limited her to a greater extent than the ALJ found. Def.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 16-1. The ALJ noted that, despite Plaintiff's diagnosis of carpal tunnel syndrome, her treating neurologist, Dr. Rubinowicz, did not provide upon Plaintiff's request an opinion regarding her functional capacity. R. at 81 (citing R. at 362-64). Because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim," her argument in this regard thus is unavailing. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Plaintiff next contends that the ALJ erred in his consideration of the opinion of Dr. Huffman, the consultative examiner who opined that Plaintiff could sit for twenty minutes, stand for twenty minutes, and walk for ten minutes at one time without interruption.  R. at 609.  According to Plaintiff, these limitations suggest that she would require a sit-stand option, which the ALJ failed to address.  Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 15-1.

As noted above, the VE testified that a hypothetical person with the RFC assessment outlined in Part III would be able to perform the unskilled, sedentary jobs of security-system monitor (DOT 379.367-010) and electrical assembler (DOT 729.687-010) (R. at 56).  *See* DOT 379.367-010, 1991 WL 673244 (listed as "surveillance-system monitor"); DOT 729.687-010, 1991 WL 679733 (listed as "assembler, electrical accessories I").  This person could also perform the unskilled, sedentary job of sorter.[8]  R. at 56.  According to the VE, her testimony was consistent with the DOT.  R. at 48, 56.

As noted in Part IV above, the Commissioner bears the burden at the final step of the five-step sequential evaluation process used to evaluate a claimant's disability claim.  *Pearson*, 810 F.3d at 207.  To determine whether sufficient other work exists for the claimant in the national economy, the ALJ relies primarily on the DOT.  *Id.*  The ALJ may also use a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy."  *Id.*  SSR 00-4p requires that the ALJ inquire, on the record, whether the VE's testimony conflicts with the DOT, and also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the VE's testimony and the DOT.  *Id.* at 207-08 (citing SSR

---

[8] Although the DOT occupational code for the sorter job was transcribed incompletely in the transcript as "687-086" (R. at 56), this job most likely corresponds to the sedentary job of "nut sorter."  *See* DOT 521.687-086, 1991 WL 674226.

00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2).  The ALJ must, by determining if the VE's explanation is reasonable, resolve conflicts before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled.  *Id.* at 208 (citing same).

An ALJ has not fulfilled his affirmative duty merely because the VE responds "yes" when asked if his testimony is consistent with the DOT.  *Id.*  Rather, the ALJ independently must identify apparent conflicts between the VE's testimony and the DOT.  *Id.* at 209.  "[I]n many cases, testimony may only *appear* to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists."  *Id.*  A VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]."  *Id.* at 209-10 (citing SSR 00-4p, 2000 WL 1898704, at *2).

"In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments."  *Brinkley v. Astrue*, 695 F. Supp. 2d 269, 282 (D.S.C. 2010) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  According to the DOT, the job of surveillance-system monitor requires a reasoning level of three.  DOT 379.367-010, 1991 WL 673244.  Level-three reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  DOT app. C, 1991 WL 688702.  The ALJ's assessment of Plaintiff's RFC, however, limited her to "simple, one- to three-step detailed tasks" (R. at 73), a limitation that apparently conflicts with the demands of level-three reasoning.  *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)

(determining that limitation to simple, routine work tasks "seems inconsistent with the demands of level-three reasoning"); *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 947 (N.D. Ind. 2012); *Gonzales v. Astrue*, No. 1:10-CV-01330-SKO, 2012 WL 14002, at *13 (E.D. Cal. Jan. 4, 2012) ("[T]he Court cannot conclude that such a limitation [to tasks involving one- to two-step instructions] also encompasses level 3 reasoning."); *Pharris v. Astrue*, No. 1:10-CV-01323 JLT, 2011 WL 3882508, at *12 (E.D. Cal. Sept. 2, 2011) ("A limitation to three and four step instructions is consistent with jobs requiring Reasoning Level 2."). *But see Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (per curiam) (determining that capacity to follow simple instructions was consistent with level-three reasoning); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (unskilled job of information clerk was not complex and thus was consistent with level-three reasoning); *Clarkson v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-631, 2013 WL 308954, at *2 (D. Md. Jan. 24, 2013). Because there is an apparent conflict between the RFC to perform simple, one- to three-step detailed tasks and the demands of level three reasoning, the ALJ "erred in failing to reconcile this apparent conflict." *Zavalin*, 778 F.3d at 847.

The ALJ's failure to reconcile this apparent conflict is harmless, however, as the VE identified the job of nut sorter to be consistent with the ALJ's assessment of Plaintiff's RFC. With a reasoning level of level one,[9] this job is consistent with Plaintiff's RFC and exists in significant numbers in the national and local economies (R. at 56, 82). *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number."); DOT 521.687-086, 1991 WL 674226.

---

[9] Level-one reasoning requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT app. C, 1991 WL 688702.

Plaintiff contends, however, that the ALJ failed to consider Dr. Huffman's opinion suggesting a sit-stand option (R. at 609), which would erode the sedentary occupational base. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 15-1 (citing SSR 96-9p). Cases suggest that the inclusion of a sit-stand option in the RFC assessment would not eliminate the availability of the sorter and electrical assembler jobs about which the VE testified.[10] *Evans v. Colvin*, No. 5:14-CV-00392-FL, 2015 WL 5331828, at *4 (E.D.N.C. June 24, 2015) (job of assembler-electrical accessories I has sit-stand option), *report and recommendation adopted*, No. 5:14-CV-00392-FL, 2015 WL 5332766 (E.D.N.C. Sept. 14, 2015); *Allen v. Colvin*, Civil Action No. 14-0364-M, 2015 WL 1003566, at *6-7 (S.D. Ala. Mar. 4, 2015) (claimant with RFC for sedentary work and requiring sit-stand option and use of handheld assistive device could perform job of nut sorter); *Taylor v. Comm'r of Soc. Sec.*, No. 3:12-CV-00272, 2013 WL 4008174, at *4 (S.D. Ohio Aug. 5, 2013) (sedentary job of nut sorter could be performed with sit-stand option); *Castillo v. Astrue*, No. 1:11-CV-01654 GSA, 2012 WL 4361573, at *2 (E.D. Cal. Sept. 21, 2012) (job of nut sorter could be performed with sit-stand option); *Zacevich v. Astrue*, No. 10-CV-02165-PAB, 2011 WL 4536989, at *6 (D. Colo. Sept. 29, 2011) (assembly-type jobs with sit-stand options included electrical assembler); *Watson v. Astrue*, No. 5:08-CV-553-FL, 2009 WL 2423967, at *6 (E.D.N.C. Aug. 6, 2009) (job of Assembler, Electronic Accessories I, could be performed with sit-stand option).

Thus, the ALJ's error, if any, in failing to incorporate a sit-stand option in the RFC assessment and hypothetical questions to the VE or in failing to address the factors under 20 C.F.R. § 404.1527(c) when evaluating Dr. Huffman's opinion was harmless. In short, substantial

---

[10] For this reason, although the VE's testimony regarding the availability of electrical assembler jobs as sedentary work conflicts with the DOT, which lists the job as light work, the error was harmless. DOT 729.687-010, 1991 WL 679733.

evidence supports the ALJ's finding at step five that, despite her inability to perform her past relevant work, Plaintiff could perform other work in the national economy.[11]

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: March 21, 2016                                     /s/
                                                         Thomas M. DiGirolamo
                                                         United States Magistrate Judge

---

[11] Regardless of any conflict between the VE's testimony and the DOT regarding the job of surveillance-system monitor, other cases also suggest that a sit-stand option would not eliminate the availability of the job of surveillance-system monitor. *See Stuckey v. Colvin*, No. 2:14cv656, 2016 WL 403651, at *10 (E.D. Va. Jan. 11, 2016) (job of surveillance-system monitor could be performed with sit-stand option), *report and recommendation adopted*, No. 2:14cv656, 2016 WL 413223 (E.D. Va. Feb. 2, 2016); *Queen v. Astrue*, Civil Action No. TMD 10-3364, 2012 WL 1016822, at *3 (D. Md. Mar. 23, 2012) (sit-stand option would not eliminate sedentary job of surveillance-system monitor); *Thornsberry v. Astrue*, C.A. No. 4:08-4075-HMH-TER, 2010 WL 146483, at *11-15 (D.S.C. Jan. 12, 2010) (job of surveillance-system monitor allows for sit-stand option).